JAMES LUTHY, Plaintiff in Error, *v.* STEPHENSON WOODS *et al.*, Defendants in Error.

### February 14, 1876.

When a party not subject to garnishment is indebted to an insolvent person, a court of equity will, in some cases, aid a creditor of such insolvent in appropriating this credit to the satisfaction of his demand.

ERROR to St. Louis Circuit Court.

*Reversed and remanded.*

*A. R. Taylor*, for plaintiff in error, cited: Pendleton *v.* Perkins, 49 Mo. 565; Wag. Stat. 1012; Henderson *v.* Dickey, 50 Mo. 165; Almett *v.* Leper, 48 Mo. 321; Murry *et al. v.* Freeman *et al.*, 44 Mo. 521; Turner *v.* Adams, 46 Mo. 99; McDowell *v.* Cochran, 11 Ill. 31; Postlewaite *v.* Howes, 3 Clarke (Iowa), 366; Hadden *v.* Spades, 20 Johns. 554; Bigelow *v.* Congregational Society, 11 Vt. 283; Williams *v.* Hubbard, Watkins' Ch. 28; Kippen *v.* Glancy, 2 Blackf. (Ind.) 336; Scott *v.* McMillan, 1 Litt. (Ky.) 302; Farrar *v.* Haselden, 9 Rich. (S. C.) Eq. 331; Greenway *v.* Thomas, 14 Ill. 272; Pope *v.* Solomon, 36 Ga. 341.

*R. E. Rombauer*, for defendants in error, cited:  Gen. Stat. 1865, ch. 165, sec. 2 ; Doan *v.* Holly, 25 Mo. 357–359 ; Pendleton *v.* Perkins and City of St. Louis, 49 Mo. 565 ; Heller *v.* Stremmel, 52 Mo. 309.

GANTT, P. J., delivered the opinion of the court.

Luthy filed a petition in the St. Louis Circuit Court, in which he stated, first, a legal demand against Woods & Barnes, and asked judgment for it against them ; and then proceeded to state that they were utterly insolvent, having no means or property that could be reached by legal process ; that the Board of President and Directors of the St. Louis Public Schools was a municipal corporation, and not subject to garnishment ; that said corporation was indebted to Woods & Barnes in the sum of $2,700 ; that by no means could this fund be subjected to the satisfaction of the claims of the creditors of Woods & Barnes except by the equitable interposition of the St. Louis Circuit Court ; that the Bremen Savings Bank claimed the said fund ; and concluded with a prayer that the court would give him judgment for his debt against Woods & Barnes, and order the Board of President and Directors of the St. Louis Public Schools to pay him, out of the sum they owed to Woods & Barnes, the amount of such judgment, with costs ; that the Bremen Savings Bank should show cause against this judgment, if any they had ; and for other and further relief.  As against Woods & Barnes, judgment was perfected in the sum of $1,360.34.  A general demurrer was filed by the Board of, etc., Public Schools, while the Bremen Savings Bank made no answer.  The court sustained the demurrer of the schools, and gave final judgment in their favor and in favor of the bank.  Plaintiff sued out this writ of error.

1. The learned counsel for plaintiff invokes the application to the case at bar of the principle declared in *Pendleton* v. *Perkins and the City of St. Louis*, 49 Mo. 565, and *Turner* v. *Adams*, 46 Mo. 99.

In the case of *Pendleton* v. *Perkins* et al. the facts were

precisely what they are here, except that Perkins was a non-resident, and no means existed of getting judgment against him; here Woods & Barnes are residents, and a judgment could be had against them without difficulty. Does this difference of facts prevent the application to the case at bar of the principles declared by the Supreme Court on that occasion?

It cannot be said that the plaintiff has exhausted his legal remedies against Woods & Barnes. Clearly, he has done nothing of the kind. But he declares that it would be vain and useless to attempt to put in use against them any legal process; that they are completely proof against everything of this nature, and that a resort to the equitable jurisdiction of the court is all from which he can hope for relief. Will the court, nevertheless, compel him to go through an empty form? or is it an empty form?

If it be an empty form, the court will not compel him to comply with it. *Lex neminem cogit ad vana seu inutilia*— the law compelleth no man to do a vain or useless thing. This maxim of the common law and of common sense was very lately approved by the decision of the Supreme Court of Missouri in the case of the *State Savings Association* v. *Kellogg & Co.*, 52 Mo. 583. There the plaintiff had sued a stockholder of an insolvent corporation without bringing suit against the corporation within a year of the accrual of the cause of action, as in terms prescribed by the 13th section of chapter 69 of the General Statutes of Missouri, page 370. The corporation had become bankrupt, and it was alleged in the petition that it was utterly insolvent. The defendant, however, insisted that it was essential that the requirement of the statute should be strictly and literally observed; and of this opinion was the Circuit Court. The Supreme Court reversed the judgment, and in doing so used language so applicable to the principle of the present case that we cannot forbear quoting it: " But it is further contended that this action cannot be maintained, because no

suit was first brought against the company. The statute (Wag. Stat. 336, sec. 13) provides that 'no stockholder shall be personally liable for the payment of any debt contracted by any company formed under this chapter * * * unless a suit for the collection of such debt shall be brought against such company within one year after the debt shall become due,' etc. The law does not require useless things, and what possible good could have been accomplished by bringing suit against the company? It would only have been accumulating costs for the plaintiff to pay, in addition to its failure to obtain any satisfaction.

" Before the debt was sixty days old the company was decreed a bankrupt. It had no assets whatever, and it would have been an idle ceremony, a useless form, to have proved up the claim in the Bankrupt Court, for the estate was wholly without funds or means of any kind. The statute plainly refers to ordinary actions where there is a subsisting corporation. But here, before the limitations had expired, the corporation was dissolved. The mere bringing of a suit under such a state of facts would have been idle, vain, and fruitless."

Says Kent, C. J., in *Trustees of Huntington* v. *Nicoll,* 3 Johns. 566–598 : " It is one of the maxims of the common law, which is also a dictate of common sense, that the law will not attempt to do an act which would be vain, or to enforce an act which would be frivolous.

" The facts [misprinted *acts* in the report] in this case surely take it out of the dry letter of the law, and furnish a remedy within its spirit and meaning. A literal compliance would have been wholly futile, and the reason for not proceeding is, I think, good, legal, and sufficient."

Nothing need be said in illustration of a principle so clearly vindicated. If the bringing of a suit and the obtaining of a judgment against the debtor were indeed an empty form, the law will not exact compliance with it.

In 46 Missouri, at page 99, the same learned judge, who

delivered the opinion of the court just quoted, used the following language :

"The rule is that it is necessary to exhaust all legal remedies before applying for the assistance of a court of chancery, and this is usually evidenced by a judgment, the issuance of an execution, and a return of *nulla bona*. But the cases hold that, where it is shown that the judgment debtor is insolvent and that the issue of an execution would necessarily be of no practical utility, its issue might be dispensed with. *Merry* et al. v. *Fremon* et al., 44 Mo. 518 ; *McDowell* v. *Cochran*, 11 Ill. 31 ; *Postlewaite* v. *Howes*, 3 Clarke (Iowa), 366. Chancellor Kent, in *McDimutt* v. *Strong*, 4 Johns. (N. Y.) Ch. 690, stated the true doctrine to be that, if the creditor has taken and exhausted all the means in his power at law, he will be entitled to the aid of a court of chancery to discover and apply the property to satisfy the execution."

It may, we think, be fairly concluded that if, before commencing the present action, the plaintiff had reduced his claim against Woods & Barnes to judgment and an execution thereon had been returned *nulla bona*, or if Barnes and Woods had been non-residents, the court below would have entertained this application. The cases cited from our own Supreme Court establish that the return of *nulla bona* to an execution is not the only evidence to which a court of chancery will listen on an issue of utter insolvency. Does the objection taken by the Board of Public Schools to what is called the blending of legal and equitable causes of action in this petition suffice to justify the refusal of the Circuit Court to afford the relief prayed?

We think the question is answered in the negative by the case of *Pendleton* v. *Perkins* et al., 49 Mo. 565. How otherwise, indeed, than by combining, for the purpose of administering the equitable relief, the legal claim against the debtor with the prayer for the interposition of the arm of equity, could a case be made for invoking the latter?

It all comes back to the inquiry: "Has the plaintiff any remedy at law?" There may be a possibility of such remedy. If it has any existence, he must resort to it. He may defer his application to the court of equity until he has proved rigorously that at law he is remediless. Ordinarily this is demonstrated by the practical exhaustion of all legal remedies, without results, by obtaining judgment, issuing execution, and a return of *nulla bona*. These things, however, are only evidence of the fruitlessness of a resort to legal process. If the futility of such a resort can be otherwise shown, we do not perceive how, in harmony with the "reason and principle of the decision" in the case of *The State Savings Association* v. *Kellogg* et al., the plaintiff shall be confined to the more formal, expensive, and tedious demonstration. We think the absence of any legal remedy sufficiently appears by the petition in this case, and, according to the decision in *Pendleton* v. *Perkins* et al., the plaintiff is entitled to relief by the extraordinary intervention of a court of equity.

The judgment of the Circuit Court is reversed and the cause remanded for proceedings in conformity with this opinion.